# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:19CR00003-003 |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| MARILYN YVETTE BLANKENSHIP, | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Janine M. Myatt, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Gregory M. Stewart,* STEWART LAW OFFICE, P.C., *Norton, Virginia, for Defendant.*

The question before the court is whether the defendant should be allowed to withdraw her guilty plea. After careful consideration of the evidence and applicable law, I find that her motion must be denied.

I.

The defendant, Marilyn Yvette Blankenship (Marilyn) is a registered nurse with a master's degree in nursing. She and her twin sister, Michele Annette Honaker (Michele), and Marilyn's son, Chandler Dalton Blankenship (Chandler), were indicted on January 23, 2019, with multiple counts of felony health care fraud.[1]

---

[1] Michele's husband, Danny Lee Honaker, was also initially charged, but was later dismissed by motion of the government.

Each of the three defendants were employed by the Virginia Medicaid agency as a Consumer Directed Service Facilitator (CDSF). The basic job of a CDSF is to help develop and oversee a plan of care for disabled Medicaid recipients who have been allowed to remain in their homes and receive needed services from personal care aides, in lieu of their placements in nursing facilities. CDSFs are required to make initial home assessments and thereafter make routine home visits as well as re-assessment home visits. A CDSF bills a Virginia Medicaid contractor for his or her services.

According to the government, during a review by the Virginia Medicaid agency of the billing information submitted by the defendants, fraudulent amounts were discovered, leading to this prosecution. It is alleged that Michele and Marilyn impermissibly double billed for both routine and re-assessment visits and that all three defendants billed for visits after their Medicaid recipients had died, leading to thousands of dollars in fraudulently obtained payments.

Marilyn entered into a written Plea Agreement with the government. A provision of the Plea Agreement provided as follows:

1. **<u>Agreement Contingent on Guilty Pleas by All Co-Defendants</u>**

    I understand the United States entered into this agreement, in part, because of the expense the government was saved by not proceeding to trial. I understand if any defendant in this case does not enter a guilty plea as agreed to in his or her plea agreement, the United States may declare the plea agreement void. I do not have the right to declare the plea agreement void.

Plea Agreement 7, ECF No. 106. On July 22, 2019, all three defendants appeared together before the court for a change-of plea hearing. Marilyn and Michele agreed to plead guilty to Count One of the Indictment, charging them with conspiring to commit health care fraud, in violation of 18 U.S.C. § 1349. Chandler, Marilyn's son, was allowed to plead guilty to a misdemeanor and the government agreed that he could be sentenced to probation. The prosecutor verbally summarized the provisions of each of the Plea Agreements, although she did not mention that Marilyn's agreement was contingent on guilty pleas by all defendants. The Plea Agreements entered into by Michele and Chandler did not include such a provision.

The court accepted the guilty pleas of all three defendants and sentencing for Marilyn was scheduled for October 18, 2019. Prior to that date, a probation officer of the court prepared a Presentence Investigation Report (PSR) to assist the court in sentencing her. Her advisory guideline range was calculated in the PSR to be from zero to six months incarceration. While the probation officer recommended that the defendant be given an adjustment for acceptance of responsibility, an acceptance of responsibility statement by the defendant set forth in the PSR, while admitting that she had billed improperly, denied any criminal intent, blaming instead her "ignorance" and inadequate training by her sister. PSR ¶ 22, ECF No. 131. After I pointed out the contrast between Marilyn's plea and her statement contained in the PSR, her attorney orally moved to allow the defendant to withdraw her guilty plea.

The attorney also moved for leave to withdraw as counsel, explaining that she had recently left the private practice of law and taken a municipal government job some distance from the court. I granted the attorney's motion to withdraw, and continued the matter pending the appointment of new counsel for the defendant.

New counsel was appointed for the defendant in due course, and on December 31, 2019, that attorney filed a written Motion to Withdraw Plea. In an accompanying memorandum, counsel relied on "the requirement that all three defendants plead guilty created undue and unjust pressure on her to enter her plea agreement." Mem. 4, ECF No. 164.

An evidentiary hearing was held on the Motion to Withdraw on January 16, 2020. The defendant testified that she had understood that unless all of the defendants pled guilty, none of them could receive a plea agreement. She testified that she had pled guilty because she loved her sister and son so much that she agreed to sacrifice herself for them, even though she didn't want to. Tr. 12, ECF No. 182. She reiterated her PSR statement that she had no criminal intent regarding any billing errors and did not do anything wrong. *Id.* at 11. She stated that she had admitted her guilt at the change-of-plea hearing because her former attorney had told her that even though she had no criminal intent, she was still guilty. *Id.* at 11, 14. She also testified that her former attorney had told her that she had to answer "yes" to everything asked of her at the change-of-plea hearing. *Id.* at 19, 20.

Counsel for the government represented to the court at the hearing that initially all three defendants were offered "package" Plea Agreements contingent on all pleading guilty.[2] The defendants rejected the government's offer. The defendants' joint trial was scheduled to begin on Monday, July 22, 2019. On the Saturday before trial the government agreed to remove the package provision from the plea agreements, and the attorneys for the defendants agreed to accept the original plea offers. However, by happenstance, the package language was not removed from the defendant's Plea Agreement, although it was removed from those of her codefendants. The defendant testified that she did not know that the package contingency had been removed from her codefendant's Plea Agreements when she signed her agreement, which, of course, still contained the package language. At the change-of-plea hearing, the prosecutor did not advise the court that the government had been insisting on a package deal for the defendants until shortly before trial.

Marilyn's former attorney did not testify at the hearing.

## II.

The defendant seeks to withdraw her guilty plea pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B). The Rule provides that "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes

---

[2] Such plea offers by the government are also commonly referred to as "linked" or "wired" agreements.

sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).

The Fourth Circuit has set forth six factors a district court should consider in determining whether a defendant has met a burden of showing a "fair and just reason" supporting the motion to withdraw. These factors include:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

*United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991). Of these six factors, the first, second, and fourth are to receive the most weight; the third, fifth, and sixth are secondary. *United States v. Sparks*, 67 F.3d 1145, 1154 (4th Cir. 1995). "The factors that speak most straightforwardly to the question whether the [defendant] has a fair and just reason to upset settled systemic expectations by withdrawing her plea are the first, second, and fourth." *Id*. By contrast, "the third, fifth, and sixth factors are better understood as countervailing considerations that establish how heavily the presumption should weigh in any given case." *Id*.

### A. Knowing and Voluntary Plea.

A Rule 11 colloquy can establish that a defendant's plea was knowing and voluntary. *See, e.g.*, *United States v. Bowman*, 348 F.3d 408, 414 (4th Cir. 2003); *Sparks*, 67 F.3d at 1153. Because the Rule 11 colloquy is the "most important consideration in resolving a motion to withdraw a guilty plea, . . . a properly conducted Rule 11 guilty plea colloquy leaves a defendant with a very limited basis upon which to have his plea withdrawn." *Bowman*, 348 F.3d at 414.

In the present case, the court informed the defendant of all of the relevant matters required in Federal Rule of Criminal Procedure 11(b)(1) and she indicated that she understood such advice. The prosecutor made a proffer of the facts the government would be prepared to prove if the case went to trial, including the following statement:

> Michele Honaker and Marilyn Blankenship used the exact same billing schemes to defraud Medicaid, employed many of the same employees, worked in the same geographical areas. They assisted each other in their work and trained Chandler Blankenship to use many of the same fraud schemes they devised.

Tr. 30, ECF No. 168. When asked, the defendant agreed that she did not contest or dispute any of proffered facts by the prosecutor and that she was pleading guilty because she was in fact guilty.

While the defendant contends that her attorney advised her to answer "yes" to all questions at the change-of-plea hearing, regardless of the truth, and wrongly

advised her that she was guilty of fraud, even if she acted only through ignorance or mistake, I do not credit her testimony in this regard. The proffer by the government of the evidence it would introduce if the case went to trial, if proved and believed by a jury, was certainly enough to convict the defendant. Her former attorney was an experienced and skilled member of the court's CJA appointed panel and would not have advised her to commit perjury at the change-of-plea hearing or to enter a guilty plea if it was not in the defendant's best interest. Moreover, while the defendant had no prior experience in the criminal justice system, she is an educated and mature person.

A more difficult issue is the package plea agreement deal initially offered by the government to all defendants. Particularly since her son was allowed by the government to plead guilty to a misdemeanor, with the likelihood of probation, the defendant may have been highly motivated by the package deal to enter a guilty plea, even if she felt herself to be innocent. While I appreciate the government's legitimate interest in package deals, it is obvious that they may produce injustice, particularly where the defendants are close family members, as here. The Supreme Court has not found such plea arrangements unconstitutional, but it has noted that they "might pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 n.8 (1978). Accordingly, "[s]pecial care must be taken to determine

the voluntariness of the plea in such circumstances." *United States v. Morrow*, 914 F.2d 608, 613 (4th Cir. 1990) (citing *Harman v. Mohn*, 683 F.2d 834, 837 (4th Cir. 1982)).

While the government has not been able to directly show that the defendant knew that the government had withdrawn its demand for a package deal, it has introduced emails to and from counsel on Saturday afternoon, July 20, 2019 — shortly in advance of the Monday trial — in which defense counsel finally agreed on behalf of their clients to accept the offered plea agreements. Chandler's attorney was the last to accept, late on Saturday afternoon, after the prosecutor had advised him that the government was prepared to go to trial on Monday only as to Chandler, having reached agreement with the other defendants, including Marilyn, Chandler's mother. Email from Myatt to Scyphers, July 20, 2019, 3:10 p.m., ECF 179-1, p. 41. It is possible that Marilyn's former attorney, in the rush of events, neglected to tell her that she did not have to plead guilty for Chandler's or Michele's sake, but it is unlikely.

However, even assuming that the defendant believed, as she claims, that she was required to plead guilty in order for her son and sister to receive the benefits of their pleas, and accepting, of course, that the court had no knowledge of that belief or the prior requirement of a package deal, I find that the defendant's plea was

voluntary.³ As the court pointed out in upholding a package plea deal in *United States v. Pollard*, 959 F.2d 1011, 1021 (D.C. Cir. 1992), "Almost anything lawfully within the power of a prosecutor acting in good faith can be offered in exchange for a guilty plea. No constitutionally impermissible compulsion arises, for instance, when a defendant is forced to choose between the possibility of a mandatory minimum sentence of ten years in prison if he goes to trial or a suspended sentence on a reduced charge if he pleads." Even if a defendant maintains innocence, her guilty plea may be voluntary and thus valid, as long as there is evidence of actual guilt. *See North Carolina v. Alford,* 400 U.S. 25, 37–38 (1970).⁴

### B. Assertion of Innocence.

While the defendant claims innocence, I find there is ample circumstantial evidence of her guilt. The government asserts that it can present evidence that the defendant billed for both routine visits and reassessment visits on the same day on

---

³ While the prosecutor should have told the court about the prior package deal before it accepted the defendant's plea, I bear equal blame here, since Marilyn's Plea Agreement as presented to me contained the package contingency provision that had been mistakenly left in, which I overlooked in my reading of the agreement. Had I not overlooked it, I would have explored the matter with the defendant.

⁴ Moreover, Marilyn's Plea Agreement was favorable to her. While the evidence showed that she had been paid $132,250.21 for services that the government alleged were fraudulent, the parties agreed that her sentencing guideline loss amount and restitution would be only $12,912.31, resulting in a sentencing range of zero to six months incarceration. PSR ¶¶ 18, 61, ECF No. 131. In contrast, Michele's Plea Agreement required restitution of $135,763.57, and a guideline range of 12 to 18 months imprisonment.

approximately 2,115 instances. PSR ¶ 13, ECF No. 131. Because a reassessment visit entails additional steps than a routine visit, it is billed at a higher rate on a different code than routine visits. *Id.* at ¶ 10. She also billed for visits after the recipients date of death on 196 occasions. *Id.* at ¶ 14. The defendant generally does not contest these billings but contends that she was simply ignorant of the rules or made careless mistakes. While a jury might find that she acted in good faith, I do not find that she has shown credible innocence.

### C. *Close Assistance of Competent Counsel.*

As previously indicated, there is no doubt that the defendant was represented by competent counsel during the prosecution and in the negotiation of her plea agreement. While she complained during the hearing on the motion to withdraw her guilty plea that her former attorney did not share all of the government's discovery material with her, she specified no particular information kept from her, or its relevance. Moreover, during the change-of-plea hearing, she swore that that she was fully satisfied with her attorney's representation. Tr. 10, ECF No. 168.[5]

---

[5] The remaining factors to be considered — delay, prejudice to the government, and waste of judicial resources — on balance are not determinative in this case. There certainly was a lengthy delay between the acceptance of the guilty plea and the initial oral motion to withdraw it, but the government has not noted any prejudice by such delay, nor would judicial resources be adversely affected by a withdrawal of the plea.

III.

For the reasons given, I find that the defendant has not shown a fair and just reason to withdraw her guilty plea.  Accordingly, it is **ORDERED** that the Motion to Withdraw Plea, ECF No. 163, is DENIED.

The Clerk shall schedule a sentencing date for the defendant.

ENTER: February 13, 2020

/s/  JAMES P. JONES
United States District Judge